**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

DEVIN MIRACLE, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

SPARKY'S CONSULTING & TACTICS, LLC, a Colorado limited liability company, and TIMOTHY MOORE, individually,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Devin Miracle ("Plaintiff"), on behalf of himself and all others similarly situated, by and through counsel, Leventhal Lewis Kuhn Taylor Swan PC, complains as follows:

**NATURE OF THE ACTION**

1. This action is brought on behalf of all Field Supervisors holding comparable positions with different titles employed by Sparky's Consulting & Tactics, LLC ("Defendant Sparky's") and Timothy Moore ("Defendant Moore") (collectively "Defendants") in Colorado during the last three (3) years, plus any period of tolling, and who were not properly paid overtime compensation.

2. This case is brought as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"). Plaintiff alleges that Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing to pay Field Supervisors required overtime compensation.

3. This case is also brought as a class action under Fed. R. Civ. P. 23 pursuant to the

Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR § 1103-1, and the Colorado Wage Act, C.R.S. § 8-4-101 ("CWA"). Plaintiff alleges that Defendants violated the COMPS Order by failing to pay Field Supervisors overtime compensation at applicable rates as required by law. Plaintiff alleges Defendants further violated the COMPS Order by failing to cover the costs of uniforms and special apparel Defendants required Plaintiff to purchase as a condition of employment with Defendants. Plaintiff alleges that Defendants violated the CWA by failing to pay all earned overtime wages.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges a claim under the FLSA.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the FLSA claim that they form part of the same case or controversy.

6. Defendants are subject to personal jurisdiction in Colorado because, as to Defendant Sparky's, it is incorporated in Colorado, both Defendants are domiciled in Colorado, both Defendants have availed themselves of the privilege of conducting substantial business in Colorado, and certain of the acts and omissions alleged herein arise out of Defendants' activities in Colorado.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## THE PARTIES

8. Plaintiff is, and was at all times relevant to this action, an adult individual domiciled in Colorado.

9. Defendant Sparky's is a Colorado limited liability company with its principal place of business located at 4665 Paris St Suite A-110 Denver, CO 80239.

10. Defendant Moore is Defendant Sparky's Found, Owner and President, a role in which he oversaw all of Defendant Sparky's operations, including business strategy and daily operations, sales/customer acquisition, marketing, staffing, compliance, budgeting, and was responsible for related executive functions. Defendants Moore was also responsible for assigning tasks, setting strategies and benchmarks, revenue quotas and other minute details, business operations and customer and stakeholder relations of Defendant Sparky's. Defendant Moore was vested with the authority to carry out the wage and hour policies of Defendant Sparky's.

11. Defendants are primarily in the business of operating a private armed security service which provides private security services for private events, security consulting, and related services for both commercial and residential customers. Defendants also provide self-defense training courses.

## COLLECTIVE ACTION ALLEGATIONS

12. Plaintiff seeks to prosecute his FLSA claim as an "opt-in" collective action on behalf of all persons who are or were employed by Defendants as Field Supervisors (or similar title as defined *supra*) in Colorado at any time in the last three (3) years, plus any period of tolling, through the entry of judgment in this case and who were not paid overtime for all hours worked in excess of forty (40) in a work week ("Collective").

3

13. Plaintiff will fairly and adequately protect the interests of the members of the Collective and has retained counsel who are experienced and competent in the fields of wage and hour law and collective action litigation. Plaintiff has no interest contrary to or in conflict with the members of the Collective.

14. The members of the Collective are similarly situated because, among other things, they were all victims of the same company-wide policies and procedures that failed to pay them all the wages to which they are entitled under the FLSA.

## CLASS ACTION ALLEGATIONS

15. Plaintiff sues on his own behalf and on behalf of a class of employees under Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure based on Defendants' violations of the COMPS Order and the CWA.

16. Plaintiff brings his Colorado state law claims on behalf of all employees who were employed by Defendants in Colorado as Field Supervisors at any time in the last three (3) years, plus any period of tolling, through the date of the entry of judgment in this case who hold or held the position of Field Supervisor (or similar title as defined *supra*) and (a) who were not paid overtime compensation for all hours worked or at an appropriate rate of pay for all hours worked, including hours in excess of forty (40) in a work week and/or twelve (12) in a work day and (b) were required to purchase uniforms and special apparel as a condition of employment with Defendants ("Wage Class").

17. The members of the Wage Class are so numerous that joinder of them is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon

4

information and belief, there are dozens of members of the Wage Class.

18. Plaintiff's claims are typical of the claims of the members of the Wage Class. Plaintiff performed the same essential job duties as the members of the Wage Class; Defendants paid Plaintiff and the members of the Wage Class pursuant to the same policies and procedures; and Plaintiff and the members of the Wage Class were victims of the same wrongful conduct in which Defendants engaged in violation of the COMPS Order and the CWA.

19. The class action mechanism is superior to any alternatives which may exist for the fair and efficient adjudication of this cause of action. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which injured parties can effectively litigate against corporate defendants like Defendant Sparky's. Numerous repetitive individual actions would also place an undue burden on the courts as they are forced to take duplicative evidence and decide the same issues relating to Defendants' conduct.

20. Defendants have acted or refused to act on grounds generally applicable to the Wage Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Wage Class as a whole.

21. Plaintiff is committed to pursuing this action and has retained competent counsel who are experienced in wage and hour law and class action litigation.

22. Plaintiff will fairly and adequately protect the interests of the members of the Wage

Class.

23. There are questions of law and fact common to the Wage Class which predominate over any questions solely affecting the individual members of the Wage Class, including, but not limited to:

   a. Whether Defendants employed the members of the Wage Class within the meaning of the COMPS Order and the CWA;

   b. Whether Defendants' policies and practices described within this Complaint are illegal;

   c. Whether Defendants properly paid the members of the Wage Class for all hours, including hours worked above 40 hours in a work week and/or twelve (12) hours in a work day;

   d. Whether Defendants properly tracked and/or calculated the number of overtime hours payable to the members of the Wage Class based on their work below, at, and beyond forty (40) hours in a work week and/or twelve (12) hours in a work day;

   e. What proof of hours worked is sufficient where, as here, Defendants failed in their duty to keep and maintain accurate time records;

   f. Whether Defendants required the purchase of uniform(s) and special apparel as a condition of employment;

   g. Whether Defendants reimbursed or otherwise incurred the expense of required uniform(s) and special apparel; and

   h. Whether Defendants are liable for all damages claimed hereunder.

**STATEMENT OF FACTS**

24. Defendants' armed security service provides private security services for private events, security consulting, and related services for both commercial and residential customers.[1] Defendants also provide self-defense training courses. Field Supervisors follow standardized processes involving well-established techniques and procedures implemented by Defendants, and they work within closely prescribed limits imposed by Defendants. Defendants employ all Field Supervisors and establish their pay practices.

25. Field Supervisors are classified as exempt, salaried employees and are compensated by static salary for all hours worked each pay period, including those over forty (40) in a work week and/or over twelve (12) in a work day.

26. Defendants employed Plaintiff as a Field Supervisor in Denver, Colorado. Plaintiff began his employment on or about February 2023 and left his employment with Defendants on or about January 2024.

27. When Defendants hired Plaintiff, he was required to purchase the following items as a condition of employment with Defendants:

    a. Two sets of handcuffs;

    b. A universal handcuff key;

    c. Flashlight;

    d. Pepper spray;

    e. Baton;

    f. Firearm (Glock or Springfield specific handgun);

---

[1] https://www.Sparky'sstactical.com/services-3 (last accessed on April 9, 2024).

   g. Plate carrier;

   h. Bullet proof vest;

   i. Heavy duty and detective style tactical/protective gear.

28. Plaintiff incurred costs exceeding $2,000 to purchase all special apparel required for employment with Defendants.

29. Plaintiff was initially hired by Defendants as an armed guard. Plaintiff worked as an armed guard from approximately February 2023 to April 2023. As an armed guard, Plaintiff was classified as a non-exempt hourly employee and was paid overtime premiums for hours worked over forty (40) in a work week and/or over twelve (12) in a work day.

30. In approximately April 2023, Plaintiff was transitioned to the role of Field Supervisor. As a Field Supervisor, Plaintiff was classified as a salary-exempt employee. Defendants advised Plaintiff that his role as Field Supervisor was a management position. Plaintiff did not have any direct reports or subordinates.

31. As a Field Supervisor, was required to work as least fifty (50) hours per week as a condition of employment. The Field Supervisor offer letter and position description provided to Plaintiff by Defendants stated that he was required to work a minimum of fifty (50) hours per week. However, due to staffing requirements, Plaintiff often worked sixty (60) to seventy (70) hours per week. Plaintiff was also required to perform post-shift work at home or otherwise away from Defendants' premises.

32. At the start of Plaintiff's tenure as a Field Supervisor, he was not required to clock in and out for shifts. The weekly schedule developed and distributed by Defendants would reflect Plaintiff's mandatory minimum fifty (50)-hour work week. In approximately May or June of 2023,

Defendants implemented an internet-based time clock for Plaintiff and other Field Supervisors, such that Plaintiff began to clock in and out when he arrived for and left his shifts.

33. As a Field Supervisor, Plaintiff was required to perform various duties and roles. At times, Plaintiff was required to work in Defendants' office and perform routine office and secretarial work (*e.g.*, complete paperwork, perform data entry, answer phones, etc.). Other times, Plaintiff was assigned to be the manager-on-duty ("MOD"), where Plaintiff was required to work from at least 1:30 p.m. to 12:00 a.m. and perform duties such as:

   a. Email various communications, including coverage notices, to clients;
   b. Check Defendants' time-keeping system to ensure armed guards clocked in for their shifts;
   c. Call off-duty guards to fill in for extra shifts in the event of no-shows, sickness, etc.;
   d. Perform data entry tasks related to guard scheduling; and
   e. Perform six (6) to eight (8) "site checks" per night.

34. Plaintiff's "site check" duties comprised of the bulk of Plaintiff's job as a Field Supervisor. When Plaintiff performed a site check, he observed the client site and staffed guards using a checklist developed by Defendants (specifically, Defendant Moore). During each site check, Plaintiff, as directed by the checklist, was required to:

   a. Inspect armed guard uniforms and equipment;
   b. Check attendance;
   c. Question armed guards about Defendants' rules for the site, including "use of force" policies for that particular site; and

9

    d. Issue "pass/fail" designations to armed guards based on the criteria listed on the check list.

35. Plaintiff did not enforce the policies or objectives included in the checklist but rather observed armed guards, asked questions, and marked the checklist. Plaintiff would simply "pass" or "fail" the armed guards at the site and report the results back to Defendants – specifically Defendant Moore. Plaintiff was not able to independently discipline or fire any armed guard who failed a site check.

36. Plaintiff did not provide any input into the development of the site checklist, nor was he able to provide suggestions or revisions to the site check list. The site checklist was developed, maintained, and enforced solely be Defendants.

37. In addition to the job duties described in the Field Supervisor position description, Plaintiff and all other members of the Collective and Wage Class were required to perform significant amounts of non-exempt armed guard work each week. On a regular basis, Plaintiff and other Field Supervisors were assigned armed guard duty and worked alongside other non-exempt armed guards and performed identical duties as the other non-exempt armed guards. However, Plaintiff and members of the Collective and Wage Class were not paid any additional compensation, including hourly or overtime wages, for performing non-exempt work alongside other hourly workers.

38. As Field Supervisors, neither Plaintiff nor members of the Collective and Wage Class (a) exercised independent discretion or judgment on matters of significance, (b) performed primary duties related to management of the enterprise, (c) managed any customarily recognized department or subdivision of Defendants' business, (d) managed two (2) or more full-time

employees, (e) directed Defendants' departmental, or overall, strategic business operations, (f) possessed individual authority or sufficient weight regarding hiring/firing/performance of other employees, or (g) performed primarily non-manual office duties.

39. Plaintiff's job duties and tasks were highly regulated and controlled, sometimes on a step-by-step and incremental level, by Defendants. Plaintiff and members of the Collective and Wage Class were prohibited from exercising discretion and independent judgment as to matters of significance within Defendants' operations.

40. Plaintiff and members of the Collective and Wage Class were directed by Defendants to strictly adhere to corporate policies implemented by Defendants.

41. Plaintiff and members of the Collective and Wage Class participated and engaged in essential job duties and tasks on a daily or weekly basis that directly related and contributed to Defendants' primary business of providing armed guard services to customers for profit.

42. Defendants improperly applied a salary exemption as to Plaintiff and members of the Collective and Wage Class.

43. Plaintiff regularly worked more than 40 hours each week, but Plaintiff never received overtime premiums at one and one-half his regular rate of pay for hours worked over 40 in individual work weeks and/or twelve (12) hours in a work day.

44. Plaintiff and all other Field Supervisors were employed under identical or substantially similar terms. All Field Supervisors were provided identical or substantially similar copies of a position descriptions at the start of their employments.

45. The common terms of employment for Field Supervisors, including the pay practices identified herein, were intentionally and purposefully made identical by Defendants.

46. The uniform and common practices and policies implemented by Defendants, including the job duties and compensation structure, applied to all Field Supervisors, including Plaintiff.

47. Due to the uniform and common policies and practices implemented by Defendants, most, if not all, of the Field Supervisors' job duties as described were determined by Defendants.

48. Defendants previously employed Plaintiff. Defendants continue to employ members of the Collective and Wage Class as alleged herein.

49. Plaintiff and members of the Wage Class were entitled to the wage protections afforded by the CWA which apply to timely payment of all earned wages.

50. Defendants have failed to pay Field Supervisors, including Plaintiff, overtime pay.

51. At times, Defendants had in place timekeeping methods for tracking and recording the time Field Supervisors spent working.

52. Defendants have a uniform policy and practice to not pay Field Supervisors for all hours worked in excess of forty (40) per work week and/or twelve (12) per work day.

53. The common terms of employment for Field Supervisors, including the requirement to purchase uniforms and other special apparel as identified herein, were intentionally and purposefully made identical by Defendants and applied to all members of the Wage Class.

54. Defendants' violations of the FLSA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay overtime compensation to Plaintiff and members of the Collective and Wage Class.

55. Upon Plaintiff's separation from Defendants, he was never reimbursed or provided

any compensation for the uniforms and special apparel Defendants required him to purchase.

## FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT – COLLECTIVE ACTION

56.  Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

57.  At all relevant times, Defendants have been, and continue to be, employers engaged in interstate commerce within the meaning of the FLSA.

58.  At all relevant times, Defendants employed, and/or continue to employ, each of the members of the Collective within the meaning of the FLSA.

59.  At all relevant times, Defendants have had gross annual revenues in excess of $500,000.

60.  Plaintiff consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b). A copy of Plaintiff's written consent is attached as Exhibit 1.

61.  At all relevant times, Defendants have had a uniform policy and practice to not pay Field Supervisors for all hours worked and/or to not pay overtime compensation for all overtime hours worked at legally mandated rates.

62.  As a result of Defendants' failure to properly compensate its employees, including Plaintiff and the members of the Collective, Defendants have violated, and continue to violate, the FLSA.

63.  As employers within the meaning of the FLSA, Defendants have a duty to create and maintain accurate records of employee hours. Defendants failed to do so.

64.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

65.  Due to Defendants' FLSA violations, Plaintiff, on behalf of himself and the

members of the Collective, is entitled to recover from Defendants unpaid overtime compensation, liquidated damages, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### COMPS ORDER – CLASS ACTION

66. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

67. At all relevant times, Plaintiff and the members of the Wage Class were employed by Defendants within the meaning of the COMPS Order.

68. Because Defendants were, at all relevant times, employers within the meaning of the FLSA, they were also employers within the meaning of the COMPS Order pursuant to 7 CCR § 1103-7-2.7.

69. Defendants violated the COMPS Order by failing to pay Field Supervisors all overtime compensation to which they are entitled at the legally required rates.

70. Plaintiff and the members of the Wage Class are entitled to recover from Defendants overtime compensation at the appropriate premium for all hours worked over forty (40) in a work week and twelve (12) in a work day, any statutory penalties, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to the COMPS Order.

71. Under COMPS 7 CCR § 1103-6.3, where wearing particular special apparel is a condition of employment, the employer shall pay the cost of purchases, maintenance, and cleaning of the uniforms or special apparel.

72. Defendants violated the COMPS Order by failing to cover the expense of uniforms

and special apparel purchased by Plaintiff and members of the Wage Class as a condition of employment with Defendants.

73. Pursuant to CCR § 1103-8.1(A), any employer who fails to adhere to COMPS 7 CCR 1103-6.3 reimburse the costs incurred by the employee to purchase the special apparel required by the employer as a condition of employment and reasonable attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### COLORADO WAGE ACT – CLASS ACTION

74. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

75. At all relevant times, Plaintiff and the members of the Wage Class were employed by Defendants within the meaning of C.R.S. § 8-104-101(5).

76. At all relevant times, Defendants were employers within the meaning of C.R.S. § 8-104-101(6).

77. The CWA defines wages as "[a]ll amounts for labor or service performed by employees," regardless of whether "the amount is fixed or ascertained by the standard of time." Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable." C.R.S. § 8-4-101(14)(a)(I)-(III).

78. Pursuant to the CWA, C.R.S. § 8-4-101(14)(a)(II)-(III), Plaintiff and members of the Wage Class worked hours at or below forty (40) hours in individual work weeks which were required to be paid at their regular hourly rates of pay.

79. Pursuant to the CWA, C.R.S. § 8-4-101(14)(a)(II)-(III), Plaintiff and members of the Wage Class worked in excess of forty (40) hours in individual work weeks which required pay at time and one-half their regular hourly rates of pay.

80. Once Plaintiff and members of the Wage Class worked hours above forty (40) in a

work week and/or twelve (12) in a work day, they earned overtime compensation even though it was not actually paid. As such, any overtime wages for which Plaintiff and members of the Wage Class were not paid were and are "wages" as defined by the CWA and are therefore subject to the requirements of the CWA.

81. Plaintiff and members of the Wage Class did not receive overtime premiums of one and one-half times their regular rates of pay for hours worked over 40 in individual work weeks.

82. Pursuant to C.R.S. § 8-4-109(3)(b), if an employer fails to pay an employee his or her earned, vested, and determinable wages as set forth by the CWA within fourteen (14) days of service of a written demand, the employee is entitled to a penalty of (a) 125% of the amount of wages due up to and including $7,500; and (b) 50% of the amount for wages due over and above the first $7,500 due.

83. Plaintiff's Complaint herein serves as a valid written demand under C.R.S. § 8-4-101(15) and 109(3)(a) for unpaid regular and overtime wages and other relief on behalf of himself and members of the Wage Class.

84. If Defendants fail to tender the demanded compensation in the amounts due to Plaintiff and members of the Wage Class within the fourteen (14) day period allotted by the CWA, Plaintiff and members of the Wage Class will be entitled to recover penalties described by to CWA, C.R.S. § 8-4-109(3)(b) and (c).

85. Pursuant to the CWA, C.R.S. § 8-4-109(3)(c), if the employee can prove that the employer's failure to pay wages due under the Act was willful, each of the penalties set forth under the CWA shall increase by 50%.

86. Defendants' failure and refusal to pay earned overtime wages, as demanded herein

within the fourteen (14) day period described by the C.R.S. § 8-4-109(3)(a.5), would be willful and in bad faith.

87. Plaintiff and members of the Wage Class are owed all earned, unpaid wages and statutory penalties, including increased penalties for willful violations of the CWA.

88. Per C.R.S. § 8-4-110, Plaintiff and members of the Wage Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other members of the Collective and Wage Class, requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the members of the Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly-situated members of the FLSA collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the members of the Wage Class and appointing Plaintiff and his counsel to represent the Wage Class;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the COMPS Order, and the CWA;

d. An injunction requiring Defendants to cease their unlawful practices under, and to comply with, the COMPS Order, and the CWA;

e. An award of overtime compensation due under the FLSA and the COMPS Order;

f. An award of overtime compensation due under the COMPS Order;

g. An award of overtime compensation due under the CWA;

h. An award of reimbursement and/or compensation for expenses incurred for uniforms and special apparel under the COMPS Order;

i. An award of any additional damages and/or interest for expenses incurred for uniforms and special apparel under the COMPS Order;

j. An award of unpaid, earned, and vested regular wages under the CWA;

k. An award of statutory penalties under the CWA of 125% of the amount of wages due up to and including $7,500; and (b) 50% of the amount for wages due over and above the first $7,500 due;

l. An award of additional statutory penalties under the CWA of an additional 50% of the penalties described in C.R.S. § 8-4-109(3)(b) for Defendants' willful violation of the CWA;

m. An award of liquidated damages and/or statutory penalties under the FLSA and the CWA as a result of Defendants' willful failure to properly pay overtime compensation;

n. An award of damages representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

o. An award of pre-judgment and post-judgment interest at the maximum rate permitted by law;

p. An award of costs and expenses of this action together with attorneys' and expert

fees; and

q. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he and all members of the Collective and Wage Class have a right to jury trial.

Respectfully submitted this 17th day of April, 2024.

/s/ Samuel D. Engelson
Samuel D. Engelson
Michael D. Kuhn
Andrew E. Swan
LEVENTHAL | LEWIS
KUHN TAYLOR SWAN PC
3773 Cherry Creek N. Drive, Suite 710
Denver, CO 80209
Telephone: (720) 699-3000
Facsimile: (866) 515-8628
Email: sengelson@ll.law
mkuhn@ll.law
aswan@ll.law

*Attorneys for Plaintiff*